IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| JACQUEZ WORTHEN, | |
| Plaintiff, | CIVIL ACTION NO.: 5:23-cv-47 |
| v. | |
| OFFICER YORK, OFFICER HOLCOMB, and TARAL TODMAN, | |
| Defendants. | |

## REPORT AND RECOMMENDATION

Defendants York, Holcomb, and Todman filed a Motion to Dismiss. Doc 47. Plaintiff filed a Response. Doc. 54. Plaintiff then filed a motion to amend his Complaint, which I granted. Docs. 56, 57. Plaintiff submitted a letter to the Court but did not properly amend the Complaint in satisfaction of the instructions in my Order.[1] Because Plaintiff has not provided an Amended Complaint, Plaintiff's original Complaint remains the operative one in this case. For the following reasons, I **RECOMMEND** the Court **GRANT** Defendants' Motion to Dismiss, **DISMISS without prejudice** Plaintiff's Eighth Amendment claims against Defendants in their individual capacities, **DISMISS** Plaintiff's official capacity claims, and **DIRECT** the Clerk of Court enter the appropriate judgment of dismissal and **CLOSE** this case. I further **RECOMMEND** the Court **DENY** Plaintiff leave to appeal *in forma pauperis*.

---

[1] I directed Plaintiff to "conform strictly" to a series of requirements and included an attached Court-approved form on which to write the Amended Complaint. Doc. 57. Plaintiff states, "[O]n the issue I want to amend, do I have to file a grievance on the problem I want to amend?" Doc. 58. This is a request for legal advice, which the Court cannot provide to litigants.

**BACKGROUND**

Plaintiff filed his 42 U.S.C. § 1983 Complaint on May 16, 2023. Doc. 1. I found that Plaintiff's Eighth Amendment excessive force claims survived frivolity review and directed service of Plaintiff's Complaint on Defendants York, Holcomb, and Todman. Docs. 28, 29. Plaintiff alleges the events giving rise to his claims took place at Ware State Prison ("WSP").

Plaintiff states, on February 27, 2023, Defendant Todman held him down while he was handcuffed and then Defendants York and Holcomb proceeded to strike him in the face and neck with their fists. Id. at 4–5. Plaintiff went to the hospital for his injuries. Plaintiff asserts he still experiences lightheadedness, blackouts, headaches, and other pain. Id. at 5.

On April 10, 2024, Defendants filed their Motion to Dismiss, arguing: (1) Plaintiff's official capacity claims are barred by qualified immunity; (2) Plaintiff failed to exhaust all administrative remedies; and (3) Plaintiff has not made the required showing to obtain injunctive relief. Doc. 47.

Plaintiff filed a Response on May 16, 2024, arguing Defendants are mistaken as to the dates of the grievances he filed. Doc. 52. Plaintiff also reiterated his rights were violated, regardless of the grievance procedure. Id. Plaintiff filed a second Response on June 14, 2024, explaining that Defendants violated his constitutional rights "no matter what." Doc. 54.

**DISCUSSION**

**I.      Plaintiff's Official Capacity Claims**

Plaintiff asserts claims against Defendants in both their official and individual capacities. Plaintiff, however, cannot sustain a § 1983 claim against Defendants in their official capacities for monetary damages. States are immune from private suits pursuant to the Eleventh Amendment and traditional principles of state sovereignty. Alden v. Maine, 527 U.S. 706, 712–

2

13 (1999). Section 1983 does not abrogate the well established immunities of a state from suit without its consent. Will v. Mich. Dep't of State Police, 491 U.S. 58, 67 (1989). Because a lawsuit against a state agency or a state officer in their official capacity is "no different from a suit against the [s]tate itself," such defendants are immune from suit under § 1983. Id. at 71.

Here, the State of Georgia would be the real party in interest in a suit against Defendants in their official capacities as employees of the Georgia Department of Corrections. Accordingly, the Eleventh Amendment immunizes Defendants from suits seeking monetary damages against them in their official capacities. See Kentucky v. Graham, 473 U.S. 159, 169 (1985) (holding the Eleventh Amendment bars official capacity claims money damages). Absent a waiver of that immunity, Plaintiff cannot sustain any constitutional claims against Defendants in their official capacities for monetary relief. Accordingly, I **RECOMMEND** the Court **DISMISS** all claims for monetary damages against Defendants in their official capacities under § 1983.

## II.   Prison Litigation Reform Act's Exhaustion Requirements

Under the Prison Litigation Reform Act ("PLRA"), an incarcerated individual must properly exhaust all available administrative remedies—including the prison's internal grievance procedures—before filing a federal lawsuit to challenge prison conditions. 42 U.S.C. § 1997e(c)(1); see Jones v. Bock, 549 U.S. 199, 202 (2007); Harris v. Garner, 216 F.3d 970, 974 (11th Cir. 2000). The purpose of the PLRA's exhaustion requirement is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Whatley v. Warden, Ware State Prison (Whatley I), 802 F.3d 1205, 1208 (11th Cir. 2015) (quoting Woodford v. Ngo, 548 U.S. 81, 93 (2006)).

Proper exhaustion is mandatory, and courts have no discretion to waive it or excuse it based on improper or imperfect attempts to exhaust, no matter how sympathetic the case or how

3

special the circumstances.  Ross v. Blake, 578 U.S. 632, 639–40 (2016) (finding the PLRA requires exhaustion "irrespective of any 'special circumstances'" and its "mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account"); Jones, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.").  Moreover, courts may not consider the adequacy or futility of the administrative remedies afforded to the inmate.  Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (noting an inmate's belief administrative procedures are futile or needless does not excuse the exhaustion requirement).  Rather, courts may only determine whether administrative remedies are available and whether the inmate properly exhausted these remedies prior to bringing his federal claim.  Id.

Proper exhaustion requires compliance with the prison's administrative policies, deadlines, and other critical procedural rules.  Woodford, 548 U.S. at 91–92; Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'" (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005))).  "[A]n inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit."  Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (quoting Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000); Gooch v. Tremble, No. 1:18-cv-058, 2018 WL 2248750, at *3 (S.D. Ga. Apr. 20, 2018) ("[B]ecause exhaustion of administrative remedies is a 'precondition' to filing an action in federal court, Plaintiff had to complete the entire administrative grievance procedure before initiating this suit." (quoting Higginbottom, 223 F.3d at 1261)).  An incarcerated individual cannot "cure" an exhaustion

defect by properly exhausting all remedies after filing suit.  Terry, 491 F. App'x at 83; Harris, 216 F.3d at 974.

Moreover, to properly exhaust, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the administrative grievance process.  Bryant, 530 F.3d at 1378; see also Okpala v. Drew, 248 F. App'x 72, 73 (11th Cir. 2003) (affirming sua sponte dismissal for failure to exhaust when a federal inmate submitted a written complaint and appealed the decision but filed his lawsuit before receiving the final decision on his appeal); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

### III.  Standard of Review for Exhaustion

A defendant may raise an inmate-plaintiff's failure to exhaust as an affirmative defense. Jones, 549 U.S. at 216 ("We conclude that failure to exhaust is an affirmative defense under the PLRA . . . ."); Pearson v. Taylor, 665 F. App'x 858, 867 (11th Cir. 2016); Whatley I, 802 F.3d at 1209.  When so raised, "[d]efendants bear the burden of proving that the plaintiff failed to exhaust his administrative remedies."  Pearson, 665 F. App'x at 867 (quoting Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008)); see also Trevari v. Robert A. Deyton Det. Ctr., 729 F. App'x 748, 752; White v. Berger, 709 F. App'x 532, 541 (11th Cir. 2017); Dimanche v. Brown, 783 F.3d 1204, 1210 (11th Cir. 2015); Turner, 541 F.3d at 1082.

While exhaustion is a mandatory requirement for suing, one exception exists.  Ross, 578 U.S. at 642 ("The PLRA contains its own, textual exception to mandatory exhaustion."). "Under the PLRA, a prisoner need exhaust only 'available' administrative remedies."  Id. at 638; Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017).  Drawing from the plain language of the word "available," the United States Supreme Court has concluded "an inmate is required to

exhaust . . . only those[] grievance procedures that are 'capable of use' to 'obtain some relief for the action complained of.'" Ross, 578 U.S. at 642; Turner, 541 F.3d at 1084 (quoting Goebert v. Lee County, 510 F.3d 1312, 1322–23 (11th Cir. 2007) ("A remedy has to be available before it must be exhausted, and to be 'available' a remedy must be 'capable of use for the accomplishment of its purpose.'")). "Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available." Turner, 541 F.3d at 1084.

Courts recognize "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Ross, 578 U.S. at 642. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id.; Turner, 541 F.3d at 1083 (noting the PLRA "does not require inmates to craft new procedures when prison officials demonstrate . . . they will refuse to abide by the established ones"). Second, exhaustion is not required when an administrative procedure is "so opaque" or "unknowable" that "no ordinary prisoner can discern or navigate it." Ross, 578 U.S. at 642. Finally, "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation[,]" such thwarted inmates are not required to exhaust. Id. at 644; Abram v. Leu, 759 F. App'x 856, 860 (11th Cir. 2019) ("An administrative remedy may be unavailable when prison officials interfere with a prisoner's pursuit of relief."); Dimanche, 783 F.3d at 1214 ("The PLRA does not 'require[] an inmate to grieve a breakdown in the grievance process.'" (quoting Turner, 541 F.3d at 1083)); Miller v. Tanner, 196 F.3d 1190, 1194 (11th Cir. 1999) (finding

6

exhaustion does not require plaintiff-inmates "to file an appeal after being told unequivocally that appeal of an institution-level denial was precluded").

In Turner v. Burnside, the Eleventh Circuit laid out a two-part test for resolving motions to dismiss for failure to exhaust administrative remedies under § 1997e(a).  541 F.3d at 1082. First, courts "look[] to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." Id.; see also Bracero v. Sec'y, Fla. Dep't of Corr., No 17-14278, 2018 WL 3861351, at *1 (11th Cir. 2018).  This prong of the Turner test ensures there is a genuine dispute of material fact regarding the inmate-plaintiff's failure to exhaust.  Glenn v. Smith, 706 F. App'x 561, 563–64 (11th Cir. 2017) (citing Turner, 541 F.3d at 1082); Pavao, 679 F. App'x at 824.  "The court should dismiss [the action] if the facts as stated by the prisoner show a failure to exhaust."  Abram, 759 F. App'x at 860 (quoting Whatley I, 802 F.3d at 1209); Turner, 541 F.3d at 1082 ("This process is analogous to judgment on the pleadings under Federal Rule of Civil Procedure 12(c).").

"If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." Turner, 541 F.3d at 1082; see also Glenn, 706 F. App'x at 563–64; Pearson, 665 F. App'x at 867 ("At the second step, the court [is] permitted to make factual findings to resolve the issue of exhaustion.").  After resolving the factual disputes, the court then decides whether, "based on those findings, defendants have shown a failure to exhaust." Bracero, 2018 WL 3861351, at *1 (quoting Whatley I, 802 F.3d at 1209).  Additionally, "[w]hen ruling on a motion to dismiss for failure to exhaust administrative remedies, the court may consider evidence outside the pleadings." Berger, 709 F. App'x at 541 n.4 (citing Bryant, 530 F.3d at 1376); Glenn, 706 F. App'x at 563–64; Singleton v. Dep't of

7

Corr., 323 F. App'x 783, 785 (11th Cir. 2009) (citing Bryant, 530 F.3d at 1376) ("A district court may properly consider facts outside of the pleadings to resolve a factual dispute regarding exhaustion where the factual dispute does not decide the merits and the parties have a sufficient opportunity to develop the record.").

IV.     **Applying Turner**

    A.     **The Georgia Department of Corrections' ("GDC") Administrative Remedies**

WSP, where these claims arose, utilizes the GDC procedures for prisoner grievances. Doc. 47-2 at 1-2. The GDC's grievance policies are set out in Standard Operating Procedure ("SOP") 227.02. Id. at 11. Under SOP 227.02, inmates may "file a grievance about any condition, policy, procedure, or action or lack thereof" that "personally affects the offender" and that is not explicitly listed in the SOP as a "non-grievable issue." Id. at 14.

The grievance procedure consists of two steps, the original grievance and the Central Office Appeal. Id. at 18. Under SOP 227.02, absent "good cause," original grievances must be filed within 10 days from the date the inmate knew or should have known of the facts giving rise to the grievance. Id. The complaint must be a single issue or incident. Id. Then, if an inmate is dissatisfied with the response or if the time allowed for the Warden's decision has expired, he may appeal the decision to the GDC Central Office. Id. at 24. An appeal must be filed within seven days of an inmate receiving the Warden's response. Id. The GDC Commissioner then has 120 days after receiving the appeal to deliver a decision to the inmate. Id. at 15. Only then is the grievance procedure complete. Id. at 25. If the grievance alleges physical force, the SOP mandates the grievance be forwarded to the Criminal Investigation Division. Id. at 22. If the grievance is accepted and referred, the process "effectively closes the grievance" and "is not appealable." Id. In addition, the inmate "shall receive a response upon the completion of the investigation conducted by the Criminal Investigation Division." Id. at 22–23. A rejected

grievance alleging physical force is still referred, but this does not exempt the rejected grievance from the appeal process.  Id. at 5, 22.

        **B.**        **Plaintiff Did Not Exhaust Available Administrative Remedies**

                ***1.***        ***Plaintiff's claims should be dismissed under Turner step one.***

At step one under Turner, the Court must consider the "factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, take the plaintiff's version of the facts as true." Turner, 541 F.3d at 1080–82.

Defendants argue Plaintiff did not complete the grievance process before filing suit. Defendants make this argument based, in part, on Plaintiff's Complaint.  Specifically, Defendants note Plaintiff left blank a field on the complaint form that gives plaintiffs the opportunity to explain if they appealed a grievance.  Doc. 47-1 at 9.  Plaintiff merely represented he had "no knowledge of the result of his grievance, stating that he had not gotten any responses."  Id. (quoting Doc. 1 at 9).  Defendants also submitted a declaration from the Grievance Coordinator at WSP, which shows Plaintiff did not complete the grievance process before filing suit.  Doc. 47-2.

In his Responses, Plaintiff does not dispute Defendants' assertion that he (Plaintiff) failed to exhaust his administrative remedies.  Plaintiff states he filed a grievance on March 3, 2023, then filed another grievance immediately afterwards.  Doc. 52 at 1.  Plaintiff also states he did not receive a response to either grievance.  Regarding the SOP's two-step grievance procedure, Plaintiff states, "I understand . . . the so called grievance procedure but what about my rights etc.[?]"  Id.  Plaintiff also states, "[T]he case shouldn't be dismissed because those three officers no matter what violated my constitutional rights."  Doc. 54 at 1.

Plaintiff's allegations and Defendants' allegations do not conflict.  Defendants assert Plaintiff did not receive a response to his grievance and he did not appeal the grievances before

9

he filed this suit. Plaintiff does not dispute this. "[U]nless the prisoner completes the administrative process by following the rules the state has established for that process, exhaustion has not occurred." Johnson, 418 F.3d at 1157–58 (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1023 (7th Cir. 2002)). Allowing an inmate-plaintiff to disregard that process "would allow a prisoner to 'exhaust' state remedies by spurning them, which would defeat the statutory objective of requiring the prisoner to give the prison administration an opportunity to fix the problem." Id. (quoting Pozo, 286 F.3d at 1023–24).

To be sure, it does not matter that Plaintiff has not received any response to his grievances. Plaintiff is obligated to appeal under the SOP, even if he does not receive a response. Doc. 47-2 at 24 ("The Offender may file a Central Office Appeal only after . . . [t]he time allowed for the Warden's/Superintendent's decision to be given to the Offender has expired); see Garcia v. Obasi, No. 21-12919, 2022 WL 669611, at *3 (11th Cir. Mar. 7, 2022) (finding a warden's failure to provide a timely response to the plaintiff "did not make a central office appeal unavailable . . . because he had the option to appeal after the time for the warden's response expired.").

Because Plaintiff admittedly did not complete the process established in the SOP before he filed suit, he did not exhaust his administrative remedies, as the law requires.

### 2. *Plaintiff's claims would also be dismissed under Turner step two.*

Defendants have met their burden at Turner step one. I note, however, it is also apparent Defendants would meet their burden under Turner step two. Assuming the parties' filings implicated a factual question as to whether Plaintiff satisfied the SOP, the record demonstrates Plaintiff has not.

"[F]actual determinations regarding exhaustion (or lack thereof) under § 1997e(a) often pose problems for the district courts." Womack v. Sikes, No. CV 307-042, 2008 WL 4104148, at *5 (S.D. Ga. Sept. 4, 2008). Nevertheless, a presiding judge may act as a factfinder in resolving whether an inmate has exhausted his non-judicial remedies. Bryant, 530 F.3d at 1374 (citing Wyatt v. Terhune, 315 F.3d 1108, 1119–20 (9th Cir. 2003)). Similarly, the Supreme Court has explained "discredited testimony" cannot be relied upon to resist dismissal. See Womack, 2008 WL 4104148, at *5 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256–57 (1986)).

Failure to exhaust is an affirmative defense that, like other affirmative defenses, puts the burden of proof squarely on defendants. See Presley v. Scott, 679 F. App'x 910, 912 (11th Cir. 2017) ("It is the defendant's burden to prove a plaintiff has failed to exhaust his administrative remedies, which requires evidence that the administrative remedies are available to the plaintiff."); Berger, 709 F. App'x at 542 (finding "[t]he district court misapplied the law in penalizing [plaintiff] for failing to take advantage of remedies the defendants failed to prove were available to him"); Whatley I, 802 F.3d at 1209; Turner, 541 F.3d at 1082–83; see also Abram, 759 F. App'x at 861 (remanding to determine whether administrative remedies were available to plaintiff where plaintiff alleged prison staff refused to provide grievance forms and plaintiff provided an affidavit from another inmate who witnessed plaintiff's request for forms and subsequent denial). Even when a plaintiff relies only "upon his own self-serving allegations," courts should not dismiss the action outright but should "consider[] whether a 'reasonable juror would undertake the suspension of disbelief necessary to credit the allegations.'" Womack, 2008 WL 4104148, at *6 (quoting Jeffreys v. City of New York, 426 F.3d 549, 555 (2d Cir. 2005)).

11

Before a court resolves disputed factual issues in a motion to dismiss, the court must ensure "the parties ha[d] sufficient opportunity to develop a record." Bryant, 530 F.3d at 1376 & n.14; see also Glenn, 706 F. App'x at 564 ("[I]f there are disputed factual issues, the court must allow the parties to develop the record . . . ."); Porter v. Sightler, 457 F. App'x 880, 882 (11th Cir. 2012); Singleton, 323 F. App'x at 785 (finding plaintiff-inmate had sufficient opportunity to develop the record when plaintiff filed "numerous pleadings, affidavits, and exhibits regarding the exhaustion issue"). Here, both parties have submitted argument or evidence on the issue of exhaustion and the availability of the grievance process. Therefore, the parties have had a sufficient opportunity to develop the record.

Defendants have shown Plaintiff did not exhaust his administrative remedies. Defendants submitted a declaration from the Grievance Coordinator at WSP and Plaintiff's grievance history in support of their Motion. The declaration demonstrates Plaintiff initiated grievances concerning the facts giving rise to Plaintiff's claims, but Plaintiff filed suit before completing the administrative remedies process. Specifically, the record shows Plaintiff filed six grievances while in custody at WSP, two of which are relevant to this case. The two relevant grievances were denied, and Plaintiff appealed. Doc. 47-2 at 7–9. Plaintiff filed Grievance Number 350084 on March 13, 2023. The grievance was rejected, and Plaintiff appealed on April 10, 2023. The Central Office issued a response on June 12, 2023, and Plaintiff acknowledged receipt on August 29, 2023. Id. at 7–8. Plaintiff's appeal was denied on September 8, 2023. Plaintiff filed Grievance Number 350931 on April 3, 2023. That grievance was rejected, then Plaintiff appealed on August 10, 2023. He received a response to his appeal on December 12, 2023. Id. at 8–9. Plaintiff's appeal was denied on December 15, 2023.

Plaintiff filed his Complaint on May 16, 2023. At the time Plaintiff filed his Complaint, he had filed both grievances and initiated the appeal process for one grievance, but he had not completed the entire remedies process for either grievance. Consequently, Plaintiff did not fully exhaust his administrative remedies before filing suit.[2] Doc. 1 at 13.

In sum, Defendants have carried their burden to show Plaintiff did not exhaust his available administrative remedies prior to filing his Complaint. Accordingly, I **RECOMMEND** the Court **GRANT** Defendants' Motion to Dismiss and **DISMISS** Plaintiff's Eighth Amendment claims against Defendants.

V.      **Leave to Appeal *in Forma Pauperis***

The Court should also deny Plaintiff leave to appeal *in forma pauperis*. Though Plaintiff has not yet filed a notice of appeal, it is proper to address this issue now. See Fed. R. App. P. 24(a)(3) (noting trial court may certify appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or

---

[2]     Plaintiff also seeks injunctive relief in the form of medical attention and "action" to be taken against Defendants "for the attack." Doc. 1 at 7. Defendants argue Plaintiff has not met his burden to show he is entitled to injunctive relief. Because I recommend dismissal of Plaintiff's claims in their entirety because Plaintiff failed to exhaust administrative remedies, I do not need to address these arguments. See Jenkins v. Shoemaker, Civ. Action No. 6:15-cv-74, 2016 WL 3512230, at *4 (S.D. Ga. June 22, 2016), report and recommendation adopted, 2016 WL 3926438 (S.D. Ga. July 18, 2016) (finding a plaintiff's claim for injunctive relief did not excuse a failure to exhaust and stating, "If courts excused plaintiffs seeking injunctive relief from pursuing administrative remedies first, then virtually every plaintiff could avoid exhaustion, rendering the requirement meaningless.").

13

argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Thus, a claim is frivolous and not brought in good faith if it is "'without arguable merit either in law or fact.'" Moore v. Bargstedt, 203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis, there are no non-frivolous issues to raise on appeal, and an appeal on these claims would not be taken in good faith. Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal

## CONCLUSION

For the foregoing reasons, I **RECOMMEND** the Court **GRANT** Defendants' Motion to Dismiss, **DISMISS without prejudice** Plaintiff's Eighth Amendment claims against Defendants in their individual capacities for failure to exhaust available administrative remedies, **DISMISS** Plaintiff's official capacity claims, and **DIRECT** the Clerk of Court enter the appropriate judgment of dismissal and **CLOSE** this case. I further **RECOMMEND** the Court **DENY** Plaintiff leave to appeal *in forma pauperis*.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date. Objections shall be specific and in writing. Any objection the Magistrate Judge failed to address a contention raised in the Complaint or an argument raised in a filing must be included. Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions. 28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020). To be clear, a

party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections.  Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 25th day of February, 2025.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA